## MILLSAPS v. CITY OF TERRELL.

### (Circuit Court of Appeals, Fifth Circuit. February 13, 1894.)

### No. 190.

**1. MUNICIPAL CORPORATIONS—BONDS—LIMIT OF INDEBTEDNESS.**

Const. Tex. art. 11, §§ 5, 7, provide that no city shall ever incur a debt for any purpose or in any manner, unless at the same time provision is made for levying and collecting a tax sufficient to pay the interest, and a sinking fund of at least 2 per cent. per annum. Article 8, § 9, provides that the tax to be levied for the erection of public buildings and other permanent improvements shall not exceed 25 cents of the $100 valuation in any one year. *Held*, that the power of a city to create debts for such purposes is limited to a sum upon which the interest, together with 2 per cent. for the sinking fund, will not exceed the revenue derived from a tax of 25 cents on the $100.

**2. SAME.**

After a city had issued bonds to such an amount that the interest and sinking fund absorbed the whole of such tax, it issued another series, and provided that the interest and sinking fund should be appropriated out of the general revenue of the city. *Held*, that the first issue of bonds, to the full amount authorized by the constitution, exhausted its power to contract debts, and the additional issue is void, without regard to its authority to apply its general revenue to the payment of interest and sinking fund of a bonded debt.

In Error to the Circuit Court of the United States for the Northern District of Texas.

At Law. This was an action by Reuben W. Millsaps against the city of Terrell. There was judgment for defendant, and plaintiff brings error.

The defendant, the city of Terrell, is a municipal corporation in the state of Texas, existing under and by virtue of chapters 1 to 10 of title 17 of the Revised Statutes. In the month of July, 1884, defendant created a debt for waterworks purposes by issuing bonds to the amount of $28,000, bearing interest at the rate of 7 per cent. per annum. In the month of October of the same year, for the purpose of erecting a city hall, defendant issued other bonds to the amount of $25,000, bearing interest at the rate of 8 per cent. per annum; and on the 1st day of January, 1885, for the purpose of completing this building, defendant made yet another issue to the amount of $2,000, bearing interest at the rate of 8 per cent. per annum. The taxable values of all the real and personal property in the city for the year 1884, as shown by the assessment rolls for that year, were $908,976. At the time of issuing the waterworks bonds, the city, by ordinance, provided for the levy of an annual tax of one-fourth of 1 per cent. to pay the interest and create a sinking fund for said bonds. Plaintiff's bonds of the first ($25,000) series were issued under an ordinance passed September 23, 1884, the third section of which is as follows: "Sec. 3. For the purpose of meeting the interest upon said bonds, and providing an annual sinking fund sufficient to discharge the principal at maturity, an annual ad valorem tax of twenty-five cents on the $100 on all property, real and personal, in said city subject to taxation, is hereby levied, and there shall be, and is hereby set apart out of the general revenue of the city constituted by one-fourth of one per cent. ad

valorem tax heretofore levied, as well as all occupation taxes levied and collected, an amount sufficient to make up all deficiency that may exist from the appropriation hereinbefore made in paying said interest and sinking fund." Plaintiff's bonds of the second series ($2,000) were issued under an ordinance passed November 25, 1884, the third section of which is as follows: "Sec. 3. Said bonds shall be known as bonds of the second series, city hall bonds, and the interest and sinking fund shall be paid out of the funds heretofore levied and set apart for the payment of interest and sinking fund of the first series." The present action is upon coupons of the 27 bonds constituting the last two issues above described.. The defense is that the city exhausted its power to create debt when it issued the waterworks bonds, and that the present bonds are therefore void. The court found as facts that, from the year 1882 down to the trial, the city had annually levied and collected a tax of one-fourth of 1 per cent. to defray its current expenses, and had also collected occupation taxes to the extent allowed by law. The amount of these latter was shown by the defendant's evidence to be about $4,000 per annum. The court also found that plaintiff is a holder for value, and before maturity, without actual notice of any objection to the bonds. Upon this state of facts the court found for the defendant, and entered judgment accordingly. Plaintiff thereupon sued out this writ of error, and filed an assignment of errors, complaining that the court erred in holding that prior to the issuance of the bonds sued on herein the defendant had, by the issuance of its waterworks bonds, exhausted its authority to create debts, and the plaintiff's bonds and coupons were therefore void.

T. K. Skinker, for plaintiff in error.

B. F. Word and M. L. Crawford, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts). The plaintiff in error does not dispute that the tax of one-fourth of 1 per cent., authorized by the ordinance of July, 1884, does not provide a fund sufficient to pay the interest on the waterworks bonds and create a sinking fund of 2 per cent., but he insists that the bonds under the ordinances of September 23 and November 25, 1884, involved in this suit are, nevertheless, valid, because, he says, the city did not by the issue of the waterworks bonds exhaust its power to create debts, and the provisions made by the ordinances of September 23 and November 25, 1884, for the payment of interest and to create a sinking fund are sufficient. The bonds in question bear interest at the rate of 8 per cent. per annum which, with 2 per cent. additional for sinking fund, must be raised annually, requiring an aggregate amount annually of about $2,700. The provisions made by the ordinances consist of (1) a special tax of 25 cents on the $100 which, it is conceded, is already fully mortgaged; (2) a general revenue tax of 25 cents on the $100; (3) the occupation taxes, —the two latter constituting, as we understand it, the alimony of the city. The question presented by the plaintiff in error, and argued by his counsel, is whether the alimony of the city, made up, under the constitution and laws of the state, of the general revenue tax and occupation taxes, can be used as a basis for creating a debt for permanent improvement and issuing therefor time-running bonds; the provision for the payment of the principal and interest thereof being the appropriation or pledge of such general revenue and occupation taxes. In our opinion, however, the first question in the case is whether the municipality had power to create the

debt based on any taxation; if not, the peculiar character of occupation taxes need not be discussed.

Article 11, § 5, of the constitution of the state, provides:

"That no debt shall ever be created by any city, unless at the same time, provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of, at least, two per cent."

Section 7 of the same article is the same, substantially, but with emphasis, to wit:

"But no debt for any purpose shall ever be incurred in any manner by any city or county, unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon and provide, at least, two per cent, as a sinking fund."

These two sections of the constitution unquestionably prohibit municipal corporations from creating debts, unless payment of such debts is provided for by taxes to be assessed and collected annually. Article 8, § 9, of the constitution, as amended in 1883, provides:

"That no county, city or town shall levy more than twenty-five cents for city or county purposes, and not to exceed fifteen cents for roads and bridges on the one hundred dollars valuation, except for the payment of debts incurred prior to the adoption of this amendment; and for the erection of public buildings, streets, sewer and other permanent improvements not to exceed twenty-five cents on the one hundred dollars valuation in any one year, and except as is in this constitution otherwise provided."

This section expressly restricts the levying of a tax for the erection of public buildings, street, sewer, and other permanent improvements to 25 cents on the $100 valuation in any one year, and, with sections 5 and 7, supra, restricts the creation of debts by municipalities for the purpose of erecting permanent improvements to a sum on which a tax of 25 cents on the $100 valuation in any one year will pay the interest and create a sinking fund of 2 per cent.; for the municipality must provide, at the time of creating a debt for permanent improvements, for the assessment and collection of a sufficient tax to pay it, and yet under section 9, art. 8, cannot, for such purpose, provide over 25 cents on the $100 valuation. If a tax is levied for the payment of debts created for permanent improvements of over 25 cents on the $100 valuation, section 9, art. 8, is violated. If a debt created for the erection of permanent improvements is in excess of such sum as the tax levied will pay the interest on, and provide 2 per cent. sinking fund, then sections 5 and 7, art. 11, are violated. When we consider, in addition, the well-settled proposition that no municipality can create a debt unless the power to do so is either expressly or impliedly conferred upon it by law, it seems clear that in the case in hand the coupons sued on, as well as the bonds to which they were accessories, having been issued by the city of Terrell for permanent improvements after the power to create debts for such purposes was exhausted, were void for want of power in the municipality that issued them. To this effect see the decisions of the supreme court of Texas: Gould v. City of Paris, 68 Tex. 517, 4 S. W. 650; City of Terrell v. Dessaint, 71 Tex. 770, 9 S. W. 593; Citizens' Bank v. City of Terrell, 78 Tex. 450, 14 S. W. 1003; Biddle v. City of Terrell, 82 Tex.

335, 18 S. W. 691; Nolan County v. State, 83 Tex. 182–195, 17 S. W. 823. We quote from Citizens' Bank v. City of Terrell, 78 Tex. 456, 14 S. W. 1003, as follows:

"While our constitution authorizes the creation of a debt and the issuance of its negotiable bonds by the defendant city to provide for constructing waterworks, its mandate is imperative that no such debt shall be created without making provision at the time of its creation to assess and collect annually a sufficient sum to pay the interest thereon, and create a sinking fund of at least two per cent. on the principal. Until that is done the debt is not created, and none exists. If not forbidden by another provision of the constitution, the levy may provide for the collection of a greater sum than the interest contracted for and two per cent. additional, but it cannot be less than that. The language is plain and unambiguous, and in relation to cities the command is twice given. The provision must be sufficient when made. If, subsequently, it becomes either more or less than sufficient, the validity of the obligation would not be affected. By another provision of the constitution the percentage on the assessed value that may be levied is limited. The constitution, in effect, commands that a city with less than 10,-000 inhabitants shall, in order to create a debt, take its latest assessment of property for taxes, and from that ascertain how much money a tax of 25 cents on $100 of valuation will produce, and it may create a debt that that amount will provide for the payment of the interest on, and 2 per cent. per annum additional. The rule applies with all its force to cities having more than 10,000 inhabitants, except that the limit of the percentage of taxation is greater."

The coupons sued on in the case in hand being void for want of power in the city of Terrell to create a debt represented by such coupons, the plaintiff in error was rightly defeated in the trial court, and it is not necessary to discuss whether the city of Terrell had a right to pledge either its general revenue or its occupation taxes to pay the same; but, even as to that, the adjudged cases are against the plaintiff in error. See Citizens' Bank v. City of Terrell, 78 Tex. 460, 14 S. W. 1003, where it is said:

"The city had no authority to pledge or appropriate any part of the current revenues for the payment of the principal or interest of the debt. That fund is devoted by the constitution to the support of the city government, and is always under the control of the council for that purpose. The net proceeds from the waterworks, if there had been such, would have likewise been under the control of the council, and was not a basis for the creation of debt."

Also, see Texas Water & Gas Co. v. City of Cleburne, 1 Tex. Civ. App. 587, 21 S. W. 393. And, if we were without authority on the subject, we are inclined, on principle, to the opinion that it is against public policy to permit the necessary alimony of any city, however small such city may be, to be bargained away beyond the year for which it is assessed and is applicable. The judgment of the circuit court is affirmed.