FT. WORTH & D. C. RY. CO. et al. v.
CRAIG et al. (No. 8218.)

(Court of Civil Appeals of Texas. Ft. Worth.
April 3, 1915. Rehearing Denied
May 1, 1915.)

1. APPEAL AND ERROR ⊙═══719—ASSIGNMENTS
OF ERROR—NECESSITY.

On an appeal from a judgment granting a temporary mandatory injunction, no formal assignments of error are necessary.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. ⊙═══719.]

2. RAILROADS ⊙═══73—RIGHTS OF WAY—PRE-
VENTING TRESPASSES—BUILDING FENCES.

A railroad company was within its rights in building a fence along its right of way to prevent the use of its right of way as a highway or passway by the patrons of a restaurant adjacent to the right of way, though there were no other means of ingress or egress to and from the restaurant, as the use of the right of way for such purposes would largely increase the hazard of accident, and was inconsistent with the use thereof for railway purposes, and a railway company may exclude trespassers from its right of way and take reasonable steps necessary to effect this purpose, even though the title in fee to the land occupied as a right of way is not vested in it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 179–182; Dec. Dig. ⊙═══73.]

Appeal from District Court, Wichita County; J. W. Akin, Judge.

Suit by John Craig and another against the Ft. Worth & Denver City Railway Company and others. From a judgment for plaintiffs, defendants appeal. Reversed and rendered.

Carrigan, Montgomery & Britain, of Wichita Falls, Thompson & Barwise and G. W. Wharton, all of Ft. Worth, and Huff, Martin & Bullington, of Wichita Falls, for appellants. T. R. Boone, of Wichita Falls, for appellees.

BUCK, J. This suit was filed by John Craig and Lee Downs in the district court of Wichita county, Tex., against the Ft. Worth & Denver City Railway Company and other named railway companies, for a mandatory writ of injunction, seeking to require defendants to remove a certain iron fence which they had erected a short time before along the east edge, but within their property line, of portions of Lots 1 and 2, block 162, of the city of Wichita Falls. Plaintiffs alleged that they were the tenants under a lease of the St. Charles Hotel property, consisting of a large hotel on the second floor, with a room downstairs facing on Seventh street, with a saloon occupying the front part of said first floor, and a restaurant in the rear thereof, and that said hotel had been used for said purposes for five months prior to the suit; that they had subrented the rear portion of said building for $25 per month for restaurant purposes, and had been deriving about $5 per day for trade drawn from people using the restaurant; that prior to the suit, on, to wit, about the 11th day of May, 1911, these defendants had instituted condemnation proceedings in the county court of Wichita county for the purpose of condemning portions of said lots and block lying immediately east of the premises now owned and controlled by plaintiffs; that said condemnation was sought for the specific purpose of placing on said property sought to be condemned a brick sidewalk to furnish ingress and egress to and from the Union Depot, situated on Eighth street, and for the purpose of acquiring a sufficient amount of ground on which to lay one house track

along the eastern border of said property, and one industrial track along and across said property, and for the additional purposes of station and depot grounds. It was further alleged that by the terms of the judgment in said condemnation proceedings the amount awarded, to wit, $10,000, was held to be compensation only for the uses and purposes above mentioned, and that said sum did not compensate the defendants in said condemnation proceeding for any other damages for any other use of said property; that said iron fence had been constructed within six inches of the wall of said St. Charles Hotel, which was on the division line, and ran the entire length of the premises controlled by plaintiffs herein, and joined to a fence on other property, and thereby closed the doors of plaintiffs' property which had been cut in the rear portion of said building for the purpose of a means of egress and ingress to the restaurant; that said restaurant was frequented by negroes alone; and that, therefore, the patrons of said restaurant were entirely excluded therefrom, inasmuch, as they could not come through the saloon, which was used also for white trade. It was further alleged that the fence had been erected for the malicious purpose of injuring and harassing the plaintiffs and of injuring and depreciating the value and revenues of said property. It was further alleged that said fence along and adjacent to the eastern wall of the hotel building blockaded the rear portion of said leased premises, and that at the rear of said building there was a common alley which had been theretofore for a number of years prior to the condemnation proceedings, and continuously up to the erection of this fence of which complaint is made, used as a way of ingress and egress for the rear portion of said building. Other allegations were made as to damages suffered and sought to be recovered.

Defendants' original answer, after pleading a general denial, specially excepted to plaintiffs' petition: (1) Because it appeared from the face of said petition that plaintiffs had an adeqaute remedy at law for any injury or damages they had suffered, or would suffer, by reason of the erection and' maintenance of the fence complained of; and (2) because said petition showed on its face that the defendants controlled the property upon which said fence had been built, and had the right under the law to erect a fence thereon, said fence having been alleged to be along and upon said defendants' right of way. It is further alleged in said answer that all rights granted in the judgment in said condemnation proceedings to the various railway companies had been acquired, and were now held, by the defendant Missouri, Kansas & Texas Railway Company and the defendant Ft. Worth & Denver City Railway Company. A part of said judgment in the condemnation proceedings was set out in said answer, and reads as follows:

"It is ordered, adjudged, and decreed by the court that the plaintiffs herein be, and they are hereby, authorized, upon the payment of said sums of money as herein directed, to take possession of the property hereinabove described, and to use the same for railway purposes, and to have the sole and exclusive possession of said property jointly for the railroad purposes set out in their amended petition filed herein, and shall. be entitled to an immediate and exclusive possession thereof upon the payment of said sums of money."

It was further alleged that the defendants in this suit, plaintiffs in the condemnation proceedings, and their successors, had occupied and used said premises as railroad property ever since the date of said condemnation proceedings. It was further alleged by defendants that the erection and maintenance of the fence in question was an absolute necessity for the protection of the public from accident and injuries on the joint house track used by defendants, and that said fence was erected upon the right of way for such purpose; that the plaintiffs were maintaining a saloon and negro eating house immediately adjacent to and adjoining defendants' right of way, and that the back doors of said saloon and of said negro eating house were opened immediately upon said house track, and that if the right of way was permitted to remain unfenced at said place that large numbers of vicious and disorderly persons would necessarily congregate about such back door, and would pass in and out of said place of business, and would be a source and element of constant danger and annoyance to the defendants, and a source of injury to the public; that in the erection of such fence defendants had invaded no private rights of plaintiffs, but had erected said fence upon their own property for a laudable public purpose, as well as their own private protection, and not to injure or vex plaintiffs in any way. It was further alleged in the supplemental answer that in the summer of 1911 Mrs. Adilene Rucks was the owner of the property now occupied by the plaintiffs, to wit, the hotel, and that there had been an agreement between her and the defendants that, in consideration of an agreement upon the part of the defendants at that time to refrain from building a plank fence where the iron fence complained of is now situated, the said Mrs. Rucks agreed to close up the doors in the east wall of said hotel building, and along the right of way of defendants, and that she did so close such doors by placing brick in the same, and that thereupon the defendants abandoned for the time the intention to build a fence at said place, and did not erect such fence until the plaintiffs, in violation of said agreement by and between the defendants and the owner of the hotel property, opened such doors by taking out said' brick, whereupon it became necessary for the defendants to erect the iron fence

complained of for their own protection and the protection of the public.

We believe sufficient pleadings have been given above to establish the issues involved in this suit and to render intelligible the discussion thereof in this opinion.

Upon the hearing the court entered a judgment decreeing the issuance of a mandatory writ of injunction prayed for, commanding the appellants to remove the fence, and prohibiting them from erecting or maintaining said fence, from which judgment this appeal is taken.

[1] Although no formal assignments of error in this kind of a case are necessary (Holbein v. De La Garza, 126 S. W. 42), yet appellants have filed their brief in this case, and also written arguments; but for the purposes of this opinion we will discuss the legal propositions involved without a direct reference to the formal assignments contained in appellants' brief.

[2] If the erection and maintenance of said fence was necessary or reasonably incident to the uses, rights, and enjoyment of the appellants in the property described and used by them for the purposes designated in the judgment in the condemnation proceedings, then it appears to us that the defendants were within their rights in erecting and maintaining said fence, and that the judgment of the trial court granting the mandatory writ was error. It appears that plaintiffs' petition nowhere negatives the proposition that said fence as erected was not necessary to the use, enjoyment, and rights of appellants in and to the property awarded to them under the condemnation proceedings, but merely alleges that:

"It is not a use of the premises as was contemplated by the condemnation proceedings heretofore had."

"The rule of pleading that the statements of a party are to be taken most strongly against himself is reinforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable inference arising upon the facts so stated from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief." Gillis v. Rosenheimer, 64 Tex. 243; Carter v. Griffin, 32 Tex. 212; Martin v. Sykes, 25 Tex. Supp. 197; Smith v. Frederick, 32 Tex. 256; Kell Milling Co. v. Bank, 168 S. W. 46; King v. Driver et al., 160 S. W. 415; Weaver v. Emison, 153 S. W. 923; Schlinke v. De Witt Co., 145 S. W. 660; City of Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 459.

It is true that the appellants in their answer alleged that the erection and maintenance of said fence was necessary to the protection, use, and enjoyment of their rights in and to said property for railway purposes specified, and that it is agreed that appellees' denial goes to all of the affirmative allegations contained in defendants' amended and supplemental answers; yet it is urged by appellants that in injunction proceedings a party who sues for an injunction must stand or fall by the allegations made in his own pleadings, and that the pleadings of the other party cannot be looked to to supply any deficiency or omission, and we are cited in support of this contention to the cases of Biddle v. City of Terrell, 82 Tex. 335, 18 S. W. 691; Railway Co. v. Vieno, 7 Tex. Civ. App. 347, 26 S. W. 230; Mullaly v. Ivory, 30 S. W. 259. To which might be added the case of De Witt Co. v. Wischkemper, 95 Tex. 435, 67 S. W. 882.

But, irrespective of the question of the sufficiency of the bill of injunction as to this allegation, we feel that it is well established by the authorities in this state that a railway company may exclude from its right of way trespassers, and may take reasonable steps necessary to effect this purpose, even though the title in fee to the land occupied as a right of way be not vested in the railway company. Railway Co. v. Ayers, 149 S. W. 1068; Olive v. Sabine Ry. Co., 11 Tex. Civ. App. 208, 33 S. W. 139; Couch v. T. & P. Ry. Co., 99 Tex. 464, 90 S. W. 860; Lyon v. McDonald, 78 Tex. 71, 14 S. W. 261, 9 L. R. A. 295. In the case of Olive v. Sabine, etc., Ry. Co., supra, it is held that, where a right of way of certain width is conveyed to a railway company, the owner of the fee may put the land to all uses consistent with the exercise by the company of its rights and performance of its duties, but that the erection of buildings on the land over which a right of way has been conveyed to the railway company, by the owner in fee, is inconsistent with the rights of the company, though it had no specific use to which it expects to put the ground. And this view of the law, as expressed in the above-cited case, is supported by various authorities, some of which will be cited. Lumber Co. v. Harris, 77 Tex. 22, 13 S. W. 453; Lyon v. McDonald, 78 Tex. 71, 14 S. W. 261, 9 L. R. A. 295; Muhle v. Railway Co., 86 Tex. 459, 25 S. W. 607. We feel that it must be held, as a matter of law, that the subjection of the right of way of the railway company to uses of a highway or passway for the patrons of a restaurant or other place of business is inconsistent with the use of said property for railway purposes, and that, therefore, the appellants in this case were within the rights accorded them under the law when they sought to exclude patrons of this restaurant, and the public generally, from using their right of way as such highway or passway. The use of such property for said purposes would largely increase the hazard of accident, and consequently the liability of the railway company, and therefore, in preventing its use for such purposes, the railway company would be taking a course, not only within the conservation of its own rights, but in the protection of the public.

The judgment of the trial court is hereby reversed, and judgment rendered for appellants dissolving the temporary writ of injunction.